# Exhibit B

coverage for claims made by a family member in the same amount as the liability coverage for claims made by a nonfamily member under the policy or binder.

(c) *Form.* — (1) An offer made under this section shall be made on the form that the Commissioner requires.

(2) The form may be part of the insurance application, policy, contract, or binder.

(3) The form shall clearly and concisely explain in 10 point boldface type:

(i) the nature, extent, benefit, and cost of the amount of liability coverage for claims made by family members that is available to the first named insured; and

(ii) that an insurer may not refuse to underwrite a first named insured because the first named insured requests or elects the liability coverage for claims made by family members in an amount equal to the coverage provided for claims made by nonfamily members.

(d) *Prohibitions against insurers.* — (1) An insurer may not refuse to underwrite a first named insured because the first named insured requests or elects the liability coverage for claims made by family members in an amount equal to the coverage provided for claims made by nonfamily members.

(2) An insurer that violates this subsection is subject to the penalties provided in §§ 4-113 and 4-114 of this article. (2004, ch. 127.)

**Editor's note.** — Section 2, ch. 127, Acts 2004, provides that "the Insurance Commissioner shall study the impact on motor vehicle liability insurance rates as a result of requiring insurers to offer to the first named insured liability coverage for claims made by a family member in the same amount as the liability coverage for claims made by a nonfamily member, as provided under this Act. On or before January 10, 2008, the Commissioner shall report, subject to § 2-1246 of the State Government Article, the findings to the General Assembly."

Section 3, ch. 127, Acts 2004, provides that "this Act shall apply to all private passenger motor vehicle liability insurance policies and binders issued, delivered, or renewed in the State on or after January 1, 2005."

Section 4, ch. 127, Acts 2004, provides that the act shall take effect Oct. 1, 2004.

## § 19-505. Personal injury protection coverage — In general.

(a) *Coverage required.* — Unless waived in accordance with § 19-506 of this subtitle, each insurer that issues, sells, or delivers a motor vehicle liability insurance policy in the State shall provide coverage for the medical, hospital, and disability benefits described in this section for each of the following individuals:

(1) except for individuals specifically excluded under § 27-606 of this article:

(i) the first named insured, and any family member of the first named insured who resides in the first named insured's household, who is injured in any motor vehicle accident, including an accident that involves an uninsured motor vehicle or a motor vehicle the identity of which cannot be ascertained; and

(ii) any other individual who is injured in a motor vehicle accident while using the insured motor vehicle with the express or implied permission of the named insured;

(2) an individual who is injured in a motor vehicle accident while occupying the insured motor vehicle as a guest or passenger; and

(3) an individual who is injured in a motor vehicle accident that involves the insured motor vehicle:

(i) as a pedestrian; or

(ii) while in, on, or alighting from a vehicle that is operated by animal or muscular power.

(b) *Minimum benefits required.* — (1) In this subsection, "income" means:

(i) wages, salaries, tips, commissions, professional fees, and other earnings from work or employment;

(ii) earnings from a business or farm owned individually, jointly, or in partnership; and

(iii) to the extent earnings are paid or payable in property or services instead of in cash, the reasonable value of the property or services.

(2) The minimum medical, hospital, and disability benefits provided by an insurer under this section shall include up to $2,500 for:

(i) payment of all reasonable and necessary expenses that arise from a motor vehicle accident and that are incurred within 3 years after the accident for necessary prosthetic devices and ambulance, dental, funeral, hospital, medical, professional nursing, surgical, and x-ray services;

(ii) payment of benefits for 85% of income lost:

1. within 3 years after, and resulting from, a motor vehicle accident; and

2. by an injured individual who was earning or producing income when the accident occurred; and

(iii) payments made in reimbursement of reasonable and necessary expenses incurred within 3 years after a motor vehicle accident for essential services ordinarily performed for the care and maintenance of the family or family household by an individual who was injured in the accident and not earning or producing income when the accident occurred.

(3) As a condition of providing loss of income benefits under this subsection, an insurer may require the injured individual to furnish the insurer with reasonable medical proof of the injury causing loss of income.

(c) *Exclusions.* — (1) An insurer may exclude from the coverage described in this section benefits for:

(i) an individual, otherwise insured under the policy, who:

1. intentionally causes the motor vehicle accident resulting in the injury for which benefits are claimed;

2. is a nonresident of the State and is injured as a pedestrian in a motor vehicle accident that occurs outside of the State;

3. is injured in a motor vehicle accident while operating or voluntarily riding in a motor vehicle that the individual knows is stolen; or

4. is injured in a motor vehicle accident while committing a felony or while violating § 21-904 of the Transportation Article; or

(ii) the named insured or a family member of the named insured who resides in the named insured's household for an injury that occurs while the named insured or family member is occupying an uninsured motor vehicle owned by:

1. the named insured; or

2. an immediate family member of the named insured who resides in the named insured's household.

(2) In the case of motorcycles, an insurer may:

(i) exclude the economic loss benefits described in this section; or

(ii) offer the economic loss benefits with deductibles, options, or specific exclusions. (An. Code 1957, art. 48A, §§ 538, 539, 545; 1996, ch. 11; 1997, ch. 70, § 1.)

**University of Baltimore Law Review.** — For article, "Uninsured Motorist Coverage in Maryland," see 21 U. Balt. L. Rev. 171 (1992).

**Discretion of appellate court.** — The appellate court erred by affirming a summary judgment based on its interpretation of the insurance policy, because the appellate court should have limited its inquiry to the trial court's interpretation and application of former Article 48A, § 543, concerning coordination of policies. Bishop v. State Farm Mut. Auto Ins., 360 Md. 225, 757 A.2d 783 (2000).

**"Pedestrian" defined.** — The legislature, for coverage purposes, intended to include as a "pedestrian" under this section all persons not occupying, entering, or alighting from a motor or other covered vehicle without regard to whether, when struck, they were actually traveling on foot, standing in a stationary position, sitting, or within some structure. Tucker v. Firemans' Fund Ins. Co., 308 Md. 69, 517 A.2d 730 (1986).

**Purpose of coverage.** — The main purpose of personal injury protection (PIP) coverage is to assure financial compensation to victims of motor vehicle accidents, without regard to the fault of a named insured or other persons entitled to PIP benefits. Clay v. GEICO, 356 Md. 257, 739 A.2d 5 (1999).

**Whether vehicle being driven at the time of the accident irrelevant.** — Where insurance company argued that because the vehicle insured by company was merely a projectile propelled into pedestrian by another vehicle, and as a projectile or inanimate object knocked into pedestrian, the vehicle insured by company did not injure pedestrian, this argument was not well taken. The facts indicated that the vehicle insured by company was not simply an innocent vehicle turned into a projectile by another driver. Moreover, whether the vehicle was a mere projectile or was being driven at the time was completely irrelevant under the statutory scheme. Nationwide Mut. Ins. Co. v. Seitz, 110 Md. App. 355, 677 A.2d 129 (1996).

**Insurers liable in absence of exclusion.** — An endorsement to an insurance policy which excluded coverage when the insured's husband was driving denies to the insured under that policy the personal injury protection which is required by statute; the insurer is liable in absence of an exclusion. Parsons v. Erie Ins. Group, 569 F. Supp. 572 (D. Md. 1983).

An insurer was both statutorily mandated by this section and contractually obligated under its policy to provide the insured with PIP benefits, because in order to fall under the scope of the statute and the policy the expense need merely be incurred, regardless of whether it is the insured, the insured's health insurer, the insured's health maintenance organization, or any other collateral source of benefits, who ultimately pays the bill. Dutta v. State Farm Ins. Co., 363 Md. 540, 769 A.2d 948 (2001).

**Scope of required coverage.** — This section does not require coverage for vehicle owner and members of his family; it requires coverage for the insured and his family; thus husband of vehicle's owner could not recover under policy of wife's employer which included the wife's car as an insured vehicle. Schuler v. Erie Ins. Exch., 81 Md. App. 499, 568 A.2d 873, cert. denied, 319 Md. 304, 572 A.2d 183 (1990).

An insurance policy which provides an exclusion for an insured occupying an uninsured motor vehicle owned by a named insured denies personal injury protection coverage to a class of persons who are required by this subtitle to be covered. The policy's exclusion, therefore, conflicts with this subtitle and is invalid. Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Gartelman, 288 Md. 151, 416 A.2d 734 (1980).

Exclusions additional to those enumerated in this section cannot be validly inserted in a policy. Parsons v. Erie Ins. Group, 569 F. Supp. 572 (D. Md. 1983).

It is clear from the plain language of this section and the language of its predecessor that automobile insurers who provide services in Maryland are mandated to provide coverage for