## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TROY L. STEVENSON, *et al.*, <br><br> Plaintiffs, <br><br> - vs - <br><br> DINA BLUHM AND G.E.I.C.O., <br><br> Defendants. | Civil Action No.: <br> 06-632 (PLF) |

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs Troy L. Stevenson and Tiara Latisha Stevenson (together "plaintiffs"), by counsel, submit this Memorandum of Law in support of their Opposition to the Motion to Dismiss filed by defendants Dina Bluhm and G.E.I.C.O.

Defendant Blum (alone) argues that this Court lacks jurisdiction over her. This argument is unavailing as the available facts demonstrate that she purposefully directed the alleged comment towards the plaintiffs, who reside in the District of Columbia, where they felt its effects. The controlling law also establishes that Ms. Blum's contacts with the District of Columbia through her employer are sufficient to maintain jurisdiction over her and that the "corporate shield" doctrine has no application here.

Both defendants argue that the Amended Complaint fails to state a claim against them. At this early stage of the proceedings, giving the Amended Complaint every benefit of the doubt, this argument fails, as the Amended Complaint alleges the requisite elements of a claim for intentional infliction of emotional distress.

## BACKGROUND

In their Amended Complaint filed April 24, 2006, the plaintiffs alleged that, on or about March 16, 2005, Dina Bluhm ("Defendant Bluhm" or "Ms. Bluhm"), a representative and employee of GEICO, spoke with them following an accident that killed Mr. Stevenson's daughter.[1]  Amended Complaint at 1.

During this telephone conversation, which was conducted over a speaker telephone, Ms. Bluhm asked Mr. Stevenson why GEICO should compensate him when his daughter "'jumped' in front of our insured's vehicle."  *Id.* at 2.  Ms. Bluhm's clear implication was that Mr. Stevenson's daughter committed suicide.  *Id.*  At the time Ms. Bluhm made the statement at issue, the plaintiffs were in Mr. Stevenson's apartment in the District of Columbia.  *Id.*

Ms. Bluhm's statement was made with "knowledge that the cause of death was ruled an accident by the medical examiner" and with knowledge that the decedent was crossing the street at the time of the accident, as indicated by the police report, "and not 'jumping' in front of vehicles."  *Id.* at 3.

The Amended Complaint alleges that Ms. Bluhm "inflict[ed] emotional distress through false claims to plaintiff that the decedent ended her own life."  *Id.* at ¶ 8.  It alleges that, as a result of Ms. Bluhm's conduct, "plaintiffs suffered loss of weight, appitite [sic], sleep and functionality and were devistated [sic] by comments made by defendant that daughter and sister committed suicide."  *Id.* at ¶ 9.

On May 26, 2006, Defendants GEICO and Ms. Bluhm filed a Motion to Dismiss ("Motion").  Defendants' Motion asserts that (1) plaintiffs fail to state a claim for intentional

---

[1]      Mr. Stevenson's wrongful death action against the driver that killed his daughter, *Stevenson, et al. v. McRea*, Civil Action No. 06-642 (PLF), is also pending in this Court.

infliction of emotional distress; and (2) this Court lacks personal jurisdiction over Ms. Bluhm. Neither of the defendants' contentions is correct.

## STANDARD OF REVIEW

In considering a Rule 12(b)(2) motion for lack of jurisdiction, "[a]ll factual disputes concerning jurisdiction must be resolved in favor of plaintiffs and plaintiffs need only make a *prima facie* showing of personal jurisdiction in order to defeat defendants' motion." *Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 104 (D.D.C. 2002) (Huvelle, J) (citations omitted; emphasis in original). *See also Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 128 (D.D.C. 2004) (Friedman, J.) (holding that a plaintiff who has not conducted jurisdictional discovery must only establish a *prima facie* case that personal jurisdiction exists to survive a motion to dismiss).

When evaluating a motion to dismiss under Rule 12(b)(6), this Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving parties. *See Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1156 (D.C. Cir. 2005); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003) ("[o]n review of a 12(b)(6) motion a court must treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged" (citation omitted)). The Court should not dismiss the claim unless it is *beyond doubt* that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Garvin v. American Ass'n of Retired Persons*, 1992 U.S. Dist. LEXIS 2013, *5 (D.D.C. Feb. 27, 1992).

*Pro se* plaintiffs are given additional leeway in drafting complaints. *See, e.g., Thomas v. Principi*, 394 F.3d 970, 974 (D.C. Cir. 2005) ("we hold pro se complaints 'to less stringent standards than formal pleadings drafted by lawyers'").[2]

## ARGUMENT

**I.    THIS COURT HAS JURISDICTION OVER MS. BLUHM BECAUSE SHE PURPOSEFULLY DIRECTED ACTIVITY TOWARDS THE DISTRICT OF COLUMBIA, THEREBY CAUSING INJURY TO THE D.C. RESIDENT PLAINTIFFS**

Defendant Bluhm argues that this Court lacks jurisdiction over her because the plaintiffs allegedly cannot satisfy the requirements of the D.C. long-arm statute, D.C. Code §§ 13-422 and § 13-423.  Ms. Blum alternatively argues that, even if this Court has jurisdiction, it should decline to exercise it pursuant to the "corporate shield doctrine."  Both arguments fail.[3]

### A.    This Court Has Jurisdiction Over Ms. Bluhm

The District of Columbia Court of Appeals recently discussed its personal jurisdiction jurisprudence in *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320 (D.C. 2000).  The *Moreno* court reviewed Supreme Court decisions and prior decisions of the Court of Appeals and "distilled" several "pertinent legal principles" that should guide courts:

(1)    D.C.'s long arm statute is co-extensive with the personal jurisdiction allowed by the due process clause of the U.S. Constitution;

(2)    the due process clause requires an examination of whether the defendant's contacts with the jurisdiction are voluntary and deliberate or random, fortuitous, tenuous and accidental;

---

[2]    Both the original complaint, which was filed in the Superior Court for the District of Columbia, and the Amended Complaint, filed in this Court, were drafted by Mr. Stevenson while he was representing himself without the benefit of counsel.

[3]    Although defendants' Motion first argues that the Amended Complaint failed to state a claim, and then argues that this Court lacks jurisdiction over Ms. Bluhm, plaintiffs are addressing Ms. Bluhm's jurisdictional argument first because, if there is no jurisdiction over Ms. Bluhm, her failure to state a claim argument is moot.

(3)     in examining the nonresident defendant's contacts with D.C., the focus is placed on the relationship among the defendant, the forum and the litigation;

(4)     "it is fair and reasonable for the District to exercise specific jurisdiction where a nonresident defendant has purposefully directed its activities at District residents, and claims against it by a District resident 'arise out of *or* relate to', or have a 'substantial connection' with the business transacted in the District"; and

(5)     "the District has a manifest interest in providing a convenient forum in which its residents may seek relief for injuries inflicted by a nonresident, especially where litigation within the District would not impose an undue burden on the nonresident defendant."

*Moreno*, 746 A.2d at 329 (citations omitted).  Jurisdiction over Ms. Bluhm satisfies these criteria.

Both the D.C. long-arm statute and constitutional due process allow jurisdiction over a non-resident defendant who purposefully directed her activities into the jurisdiction, where its effects were felt by the plaintiffs.  In *Calder v. Jones*, 465 U.S. 783 (1984), a unanimous Court held that California could exercise personal jurisdiction over nonresident defendants, despite the fact that their only contact with California was limited and through their jobs.  The Court held that the defendants' actions impacted the plaintiff where she lived and worked – in California – which was where she suffered emotional distress from the article. *Id.* at 789.  The Court held that the defendants' intentional, and allegedly tortuous actions, were expressly aimed at California, where the plaintiff resided and, as a result, the court had jurisdiction over the defendants. *Id.* at 789-90.  As the court reasoned, "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." *Id.* at 790.[4]

---

[4]    In *Moreno*, the court held that the mere placing of advertisements in D.C. newspapers was a purposeful activity directed at D.C. residents that was not random, fortuitous, accidental or attenuated, and that, as a result, the non-resident defendant should have reasonably anticipated being haled into D.C. to answer for its actions. *Moreno*, 746 A.2d at 331 (citations omitted).

*Calder* applies with equal force here.  Ms. Blum directed the offending statement at the District of Columbia, where the plaintiffs felt its effects.  Ms. Blum's actions were not random, fortuitous, accidental or attenuated; rather, they were direct and intentional.  This purposeful, affirmative activity provides sufficient connection with the District of Columbia to allow this Court to exercise jurisdiction over Ms. Blum.  In the words of the *Calder* court, the plaintiffs should not have to go Maryland to seek redress from Ms. Blum who, through remaining in Maryland, knowingly caused the injury in D.C.  *See also Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C. Cir. 1981) (en banc) (reversing trial court and holding that personal jurisdiction can properly be exercised over a nonresident defendant whose activities "cause a consequence here" (citations omitted)).

The remaining *Moreno* factors also compel a finding of jurisdiction.  As noted above, Ms. Blum's actions were voluntary and deliberate, and not random, fortuitous, tenuous and accidental.  The plaintiffs' claims arise directly out of Ms. Blum's purposeful activities directed at the District of Columbia and the plaintiffs.  Finally, this Court is a convenient forum for the plaintiffs to seek relief for the damages they suffered in the District Court, and it would not impose an undue burden for Ms. Blum (who works in Chevy Chase, Maryland) to defend herself here.[5]

Alternately, this Court has jurisdiction pursuant to sections (a)(1) and (a)(4) of the District of Columbia's long-arm statute.  Subsection (a)(1) allows jurisdiction where the defendant transacts business in the District of Columbia.  Subsection (a)(4) allows jurisdiction

---

[5]     The only two cases cited by Ms. Blum in support of her argument that this Court lacks jurisdiction are inapposite.  In both *Margoles v. Johns*, 333 F. Supp. 942, 944 (D.D.C. 1971) and *Security Bank, N.A. v. Tauber*, 347 F. Supp. 511, 516-17 (D.D.C. 1971), the court rejected arguments that telephone calls from outside the District of Columbia sufficed for physical presence under a subsection of the long arm statute requiring physical presence in the District of Columbia.  Plaintiffs make no such argument here.  As neither *Margoles* nor *Tauber* discuss the "effects" test of *Calder* and *Mouzavires*, they are of no relevance here.

where a defendant causes injury in the District of Columbia, by an act or omission outside the District of Columbia, if she regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from services rendered in the District of Columbia.

As an employee of GEICO, which is clearly subject to jurisdiction in the District of Columbia under § 13-423(a)(1) or (a)(4), Ms. Bluhm has transacted business in the District of Columbia, or has engaged in a persistent course of conduct in the District of Columbia, during her activities as an employee of GEICO, thus giving this Court jurisdiction over her. *See American Directory Serv. Agency v. Beam*, 131 F.R.D. 15, 17 (D.D.C. 1990) (Pratt, J.) (holding that the Court had jurisdiction over nonresident employee who directed activities towards jurisdiction as part of employment).

**B.    The "Corporate Shield" Doctrine Does Not Shield Ms. Bluhm from this Court's Jurisdiction**

Ms. Bluhm next argues that personal jurisdiction should not be imposed upon her because she was acting as an employee of GEICO when her conversation with the plaintiffs occurred.  Motion at 15-16 (citing the "corporate shield doctrine").  This argument is flawed in two respects.  First, the Supreme Court has held that imposing personal jurisdiction upon an individual for acts performed for the benefit of the employer does not violate the Due Process clause of the 14th Amendment.  Additionally, the corporate shield doctrine does not operate to limit the District of Columbia long-arm statute, and, even if it did, equitable considerations here justify refusing to recognize the doctrine.

The Supreme Court has twice definitively stated that acting within the scope of employment does not protect an individual from a court's jurisdiction.  In *Calder*, the court held that "[p]etitioners are correct that their contacts with California are not to be judged according to

their employer's activities there.  On the other hand, their status as employees does not somehow insulate them from jurisdiction.  Each defendant's contacts with the forum State must be assessed individually."  *Calder*, 465 U.S. at 790 (holding that the court had jurisdiction over the nonresident defendant employees).  Similarly, in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984), the court rejected "the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity."  Thus, the Court has twice concluded that imposing personal jurisdiction upon an employee for acts performed within the scope of employment does not violate constitutional due process.

The three cases cited in defendants' Motion do not hold otherwise.  While the courts in both *Security Bank, N.A. v. Tauber*, 347 F. Supp. 511 (D.D.C. 1972), and *Quinto v. Legal Times of Washington, Inc.*, 506 F. Supp. 554 (D.D.C. 1981), refused to impose personal jurisdiction upon the non-domiciliary defendants, ***neither case mentions the corporate shield doctrine or indicates that the court is attempting to apply it***.

At first blush, the third case cited by defendants, *American Directory Service Agency v. Beam*, 131 F.R.D. 635 (D.D.C. 1990), provides the strongest support for application of the corporate shield doctrine.[6]  This decision, however, which was issued by a magistrate judge, was later reviewed and modified by the District Court in *American Services Agency, Inc. v. Beam*, 131 F.R.D. 15 (D.D.C. 1990).  The District Court's opinion strongly questioned the validity of the doctrine in the District of Columbia, holding that it "'confuses procedural and substantive questions and unreasonably immunizes from jurisdiction one who in fact acted in the forum state.'"  *Id.* at 17 (quoting *Chase v. Pan-Pacific Broadcasting, Inc.*, 617 F. Supp. 1414, 1423

---

[6]     The Magistrate Judge ultimately recommended that the defendant's motion to dismiss be denied due to equitable considerations.

(D.D.C. 1985)).  Ms. Bluhm's reliance upon these cases further illustrates the weakness of her argument.

Finally, even if the corporate shield doctrine is somehow applicable here (and it is not), equity demands that the Court not apply it to shield Ms. Bluhm from jurisdiction.  As Ms. Bluhm admits in her motion, mechanical application of the doctrine is inappropriate, and the doctrine should be applied by balancing the fairness to both parties.  Motion at 15 (citing cases).  For this reason, even those courts that have recognized the corporate shield doctrine as valid have been quick to discard it upon a finding of equitable considerations.  In both of the cases cited by the defendant that actually mentioned and recognized the corporate shield doctrine, *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 903 (2d Cir. 1981) and *American Directory Service Agency v. Beam*, 131 F.R.D 635, 641 (D.D.C. 1990), the courts refused to apply the doctrine and granted long-arm jurisdiction because of fairness.

Here, Ms. Bluhm intentionally inflicted emotional distress upon the plaintiffs through her contact with the forum.  Given the intentional nature of the tort being alleged against Ms. Bluhm, principles of fairness and equitable considerations justify disregarding the jurisdictional protections the corporate shield doctrine would provide her (if it were found to exist under D.C. law).

## II.    AT THIS EARLY STAGE OF THE PROCEEDING, THE AMENDED COMPLAINT ADEQUATELY STATES A CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Both defendants move to dismiss the Complaint for failure to state a claim upon which relief may be granted.  To survive a motion to dismiss, a plaintiff must allege (1) extreme and outrageous conduct on behalf of the defendant which (2) either intentionally or recklessly (3) causes the plaintiff severe emotional distress.  *Joyner v. Sibley Mem. Hosp.*, 826 A.2d 362, 373

(D.C. 2003); *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002) (reversing trial court's decision to dismiss complaint for failure to state a claim).  The Amended Complaint sufficiently alleges each of these three elements.

**A.    Ms. Bluhm's Conduct May Be Reasonably Regarded as Extreme and Outrageous**

To state a claim for intentional infliction of emotional distress, the plaintiff must first allege conduct by the defendant that may be reasonably viewed as "extreme and outrageous." *Joyner*, 826 A.2d at 373.  At the pleading stage, the plaintiff need not allege conduct that is certain to meet the "extreme and outrageous" standard; instead, the plaintiff need only allege acts that "*may reasonably be regarded* as so extreme and outrageous as to permit recovery."  *Drejza v. Vaccaro*, 650 A.2d 1308, 1316 (D.C. 1994) (citing Restatement (Second) of Torts § 46, cmt. h (1965)) (emphasis added).

Where reasonable persons may disagree whether the conduct alleged is sufficiently extreme and outrageous, it is for the jury at trial, not the court, to determine whether the conduct should result in liability.  *Drejza*, 650 A.2d at 1316; *King v. Kidd*, 640 A.2d 656, 668 (D.C. 1993).  Thus, to survive a motion to dismiss, the plaintiff need only allege conduct that a reasonable person could view as "extreme and outrageous."

Whether conduct rises to the level of "extreme and outrageous" is primarily informed by two considerations: (1) whether the conduct offends applicable community standards of decency and (2) the specific context in which the conduct took place.  *See King*, 640 A.2d at 668. Regarding community standards of decency, the conduct alleged must be sufficiently "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Larijani*, 791 A.2d at 44.

- 11 -

In addition to the nature of the defendant's conduct, courts will consider "the specific context in which . . . [it] took place, for in determining whether conduct is extreme or outrageous, it should not be considered in a sterile setting." *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 935 (D.C. 1995). For example, courts will carefully scrutinize behavior where the defendant is in a "position to harass the plaintiff and cause emotional distress." *Id.* Here, both the nature and context of defendant's conduct demonstrate that the conduct could be reasonably viewed as "extreme and outrageous."

The Amended Complaint alleges that, just days after the tragic death of his daughter, Ms. Bluhm advised Mr. Stevenson that his "daughter 'jumped' in front of our insured's vehicle." Amended Complaint at 2. In so doing, Ms. Bluhm expressed her viewpoint to Mr. Stevenson that his daughter had committed suicide, and did so with full knowledge of the father-daughter relationship between Mr. Stevenson and the decedent. Worse, Ms. Bluhm herself acknowledged that her conclusion was premature. Almost immediately after making the offending statement, Ms. Bluhm volunteered that "the investigation is still ongoing." *Id.* A reasonable person could easily view Ms. Bluhm's conduct – the imposition of her unqualified and otherwise baseless opinion that the plaintiff's daughter committed suicide *while* that very issue was under investigation – as "extreme and outrageous."

The Court is not without guiding precedent on this issue. In *Garvin v. American Ass'n of Retired Persons*, 1992 U.S. Dist. LEXIS 2013, *4 (D.D.C. Feb. 27, 1992), this Court held that referring to a family member's poor health might constitute extreme and outrageous conduct. There, the plaintiff alleged that the defendant "joked about AIDS in plaintiff's presence, knowing that plaintiff's brother was suffering from that illness." *Id.* at 4.

In denying the defendant's motion to dismiss, this Court held that joking about a disease in the plaintiff's presence, *with the knowledge* of the plaintiff's family member's condition, was sufficient to state a claim for intentional infliction of emotional distress. *Id.* at *12. Here, Ms. Bluhm's comment was even more callous, as it referred not to an ill sibling with a chance to recover, but rather to a recently-deceased child.

The context in which Ms. Bluhm's comments took place likewise adds to their "extreme and outrageous" character. While Ms. Bluhm's comment would have been hurtful at any time, it was particularly damaging so soon after the death of Mr. Stevenson's daughter. Moreover, the conversation during which Ms. Bluhm's comment took place added insult to injury. Ms. Bluhm expressed her viewpoint in the context of *financial* settlement discussion, implying to Mr. Stevenson that his daughter's life was less valuable based on Ms. Bluhm's assessment that the decedent had committed suicide.

Defendants argue that an alleged legitimate business purpose underlying the conduct negates a finding of extreme and outrageous conduct. The two cases cited by defendants, however, *Joyner v. Sibley Mem. Hosp.*, 826 A.2d 362 (D.C. 2003) and *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624 (D.C. 1997), both arose at the summary judgment stage, where the court had an opportunity to fully assess and determine the circumstances surrounding the alleged statement. Neither *Joyner* nor *Kerrigan* is helpful to defendants' Motion, which arises at the motion to dismiss stage, before any discovery has occurred.

Moreover, the actions at issue in both *Joyner* and *Kerrigan* arose in the context of employer/employee relationship, where courts have traditionally imposed a more stringent level of proof. *See, e.g., Joyner*, 826 A.2d at 373 ("In the employment context, we traditionally have been demanding in the proof required to support an intentional infliction of emotional distress

claim"); *Kerrigan*, 705 A.2d at 628 ("[t]his conduct, even construed as true, was of the type attributable to 'employer-employee conflicts that do not, as a matter of law, rise to the level of outrageous conduct'"); *see also Chung v. Lee*, 852 F. Supp. 43 (D.D.C. 1994) (also cited by defendants, but arising in the employer/employee context).[7]    As there was no employer/employee relationship between Ms. Bluhm and the plaintiffs here, defendants' citation to – and reliance upon – these cases is misplaced.

Additionally, even if there was a general "legitimate business purpose privilege," Ms. Bluhm's statements were not attributable to any legitimate business purpose.  It was unnecessary for Ms. Bluhm to convey an opinion about the cause of Mr. Stevenson's daughter's death. Instead, Ms. Bluhm should have informed Mr. Stevenson of GEICO's settlement offer without expounding upon the reasons underlying it.  To do so unnecessarily and without considering the obvious and damaging consequences demonstrates irresponsibility of the highest order.  By any standard of decency, opining that a young girl committed suicide in her father's and sister's presence *during* an ongoing investigation of that fact constitutes conduct that is sufficiently "extreme and outrageous" to constitute a claim for intentional infliction of emotional distress.[8]

---

[7]    In a similar vein, while the Court in *Carey v. Edgewood Mgt. Corp.*, 754 A.2d 951 (D.C. 2000), affirmed dismissal of the plaintiff's intentional infliction of emotional distress count, it did so because of a reluctance to extend the doctrine to a landlord/tenant dispute: "we could not sustain Carey's claim without holding that virtually any action by a landlord (or person with similar authority) motivated by discriminatory intent states a claim for intentional infliction of emotional distress.  We decline to apply the tort that broadly."  *Id.* at 956 (citation omitted).  The *Carey* court also noted that the plaintiff's claim was undercut by the fact she initiated the action of which she was claiming.  Here, of course, the plaintiffs are not seeking to extend the claim beyond its limits; rather, they have properly alleged a cognizable claim that survives defendants' motion to dismiss.

[8]    Defendants contrast Ms. Bluhm's actions with those of the defendant in *Carter v. Hahn*, 821 A.2d 890 (D.C. 2003), in which the defendant intentionally or recklessly levied a false criminal accusation against the plaintiff, and argue that Ms. Bluhm's actions do not rise to the *Carter* level.  Motion at 7-8.  This straw-man argument does not merit an extended response.  While the actions of the defendant in *Carter* were obviously sufficient to overcome the defendant's motion, so too are Ms. Bluhm's actions here, especially when compared with the actions held sufficient in *Garvin*.

### B.    Ms. Bluhm Possessed the Required Degree of Intent

The second element of intentional inflectional of emotional distress requires that the plaintiff must allege that the defendant intentionally *or recklessly* caused the plaintiff's severe emotional distress. *Joyner*, 826 A.2d at 373 (emphasis added). Notwithstanding the tort's name, "specific intent is not required; reckless infliction of emotional distress is sufficient." *Homan*, 711 A.2d at 820. Liability may attach not only to conduct that is certain to result in several emotion distress, but also where there is "a high degree of probability, that the mental distress will follow [from the defendant's conduct], and the defendant goes ahead in conscious disregard of it." *Homan*, 711 A.2d at 820. The Amended Complaint satisfied this standard.

Accepting the Complaint's allegations as true, Ms. Bluhm's conduct clearly demonstrated a reckless disregard for the likelihood that plaintiffs Mr. Stevenson would suffer severe emotional distress upon being told that his daughter had committed suicide. Knowing Mr. Stevenson to be the decedent's father, Ms. Bluhm must have been aware of the impact her words would likely have on Mr. Stevenson. By needlessly opining that Mr. Stevenson's daughter had "jumped" in front of the insured driver, Ms. Bluhm ignored the obvious risk that Mr. Stevenson would suffer severe emotional distress. Ms. Bluhm's conduct embodies precisely the recklessness required to state a claim for intentional infliction of severe emotional distress.

The case to which defendants cite concerning this element, *Ferenc v. World Child, Inc.*, 977 F. Supp. 56 (D.D.C. 1997), is readily distinguishable from the instant case. Most notably, *Ferenc* was decided at the summary judgment stage and did not consider a motion to dismiss. *Ferenc*, 977 F. Supp. at 61. Operating under a different standard, the summary judgment decision in *Ferenc* has no bearing on the instant case. Moreover, the parties in *Ferenc* had a contractual relationship limiting their legal rights vis-à-vis one another. *Id.* at 60. Unlike

*Ferenc*, there is no contract here between Mr. Stevenson and Ms. Bluhm waiving specific claims between the parties.

Having alleged extreme and outrageous conduct by Ms. Bluhm which recklessly subjected both plaintiffs to severe emotional distress, the Amended Complaint properly satisfies the first two elements required to state a claim for intentional infliction of emotional distress.

### C.     The Complaint Sufficiently Alleges That Mrs. Bluhm's Conduct Caused Plaintiffs to Suffer Severe Emotional Distress

To plead the final element required for a claim for intentional infliction of emotional distress, a plaintiff must allege emotional distress that is severe. *See Joyner*, 826 A.2d at 373; *Homan*, 711 A.2d at 817. According to the Restatement, the third element requires that the emotional distress inflicted amount to more than "some degree of transient and trivial emotional distress [which] is a part of the price of living among people." Restatement 2d. §46 cmt. j. In evaluating a motion to dismiss, the Court's task is to determine "whether on the evidence severe emotional distress *can* be found," leaving for the fact finder the question of "whether, on the evidence, it has in fact existed." *Id.* (emphasis added).

The list of conditions experienced by a suffering defendant that may give rise to a claim for intentional infliction of emotion distress is extensive. According to this Court, "various emotional conditions can support an award of compensatory damages for [intentional infliction of emotional distress]." *Dammarell v. Islamic Republic of Iran*, 404 F. Supp. 2d 261, 275 (D.D.C. 2005) (Bates, J). Indeed, emotional distress can be manifested by various emotional states including but not limited to "mental suffering, mental anguish, mental or nervous shock . . . fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea." Restatement 2d § 46 cmt. j.

District of Columbia courts have routinely imposed liability for intentional infliction of emotional distress where the defendant suffered from one or more of the conditions listed above. *See, e.g.*, *Estate of Underwood v. National Credit Union Admin.*, 665 A.2d 621, 642 (D.C. 1995) (upholding verdict for plaintiff where plaintiff suffered from, among other things, "depression and stress" as a result of defendant's tortious conduct); *Robinson v. Sarisky*, 535 A.2d 901, 906 (D.C. 1988) (plaintiffs' "feelings of violation, anxiety, and helplessness" and personality changes constituted compensable emotional distress). Just last month, this Court found that allegations of severe "embarrassment and ridicule" in the complaint were sufficient to overcome a motion to dismiss a intentional infliction of emotional distress claim. *See Park v. Hyatt Corp.*, 2006 U.S. Dist. LEXIS 44727, *10 (D.D.C. June 30, 2006) (Roberts, J).

Emotional harm alone is sufficient to state an intentional infliction of emotional distress claim. A plaintiff seeking to recover damages for intentional infliction of emotional distress need not prove that he suffered any physical damages. *Homan*, 711 A.2d at 821; Restatement 2d § 46 cmt. k ("if the conduct is sufficiently extreme and outrageous, there may be liability for emotional distress alone, without [bodily] harm").

Given these parameters, there is no doubt that the Amended Complaint pleads emotional distress with the requisite severity. Both plaintiffs expressly plead having suffered from "extreme emotional distress" as a result of Ms. Bluhm's recklessly insensitive statement, Amended Complaint at 2, including "loss of weight, appitite [sic], sleep, and functionality." Amended Complaint at ¶ 9.

Taken as true, these allegations properly plead conditions of mental suffering, fright, horror and nausea, each of which is specifically identified as a vehicle for emotional distress by the Restatement 2d § 46 cmt. j. Further, incessant nightmares and lost appetite rise well beyond

"transient and trivial emotional distress" identified by the Restatement and are more harmful than the "embarrassment and ridicule" pled by the complaint in *John Park*, where the court rejected a motion to dismiss.

Regarding the severity element, Defendants cite to *Larijani* and argue that any allegations that fall short of those set forth by the plaintiff there must be dismissed. Defendants' reliance on *Larijani* is misplaced. First, the majority opinion does not establish the minimum severity threshold to survive a motion to dismiss. Rather, that assertion comes only from a concurring opinion not embraced by the majority. *Larijani*, 791 A.2d at 45. Second, even if *Larijani* did create a minimum standard for the severity of an intentional infliction of emotional distress claim, the allegations in the Amended Complaint here meet that standard. The plaintiffs here allege injuries similar to those in *Larijani*, namely extreme emotional distress, the inability to sleep and complete loss of appetite. *See* Amended Complaint at 2; *Larijani*, 791 A.2d at 43.

Just as the Plaintiffs' allegations plead sufficiently severe emotional distress, they likewise assert that the distress was *caused by* Ms. Bluhm's extreme and outrageous conduct. The Amended Complaint describes the conversation in which Ms. Bluhm claimed that Mr. Stevenson's deceased daughter "jumped" in front of the insured's vehicle and his other daughter's immediate reaction, *id.* at 2, and continues:

> ***This*** has caused extreme emotional distress in both my daughter
> and myself. ***As a result***, I have not been able to sleep at night
> because I have nightmares about daughter's untimely death.

*Id* (emphasis added). This allegation links the severe emotional distress experienced by Mr. Stevenson and his daughter directly to his conversation with Ms. Bluhm. Notably, these phrases showing causation between Ms. Bluhm's comments and Mr. Stevenson's severe emotional distress are left out of the Defendant's recitation of the relevant allegations. *See* Defendants'

Motion at 10.  Viewed without redaction, the Amended Complaint clearly alleges that the various conditions experienced by Mr. Stevenson were caused directly by Ms. Bluhm's statement.  Based on the foregoing, the Amended Complaint properly alleges that the plaintiffs suffered severe emotional distress as a result of Ms. Bluhm's conduct.  As a result, the defendants' Motion to dismiss for failure to state a claim should be denied.[9]

## **CONCLUSION**

For the foregoing reasons, defendants' Motion to dismiss should be denied in its entirety.

Dated: July 27, 2006                    Respectfully submitted,


_____/s/_____
Leslie Paul Machado (Bar No. 472395)
John W. Bramlette (*admitted pro hac vice*)
NIXON PEABODY LLP
401 Ninth Street, N.W., Suite 900
Washington D.C.  20004
(202) 585-8000 (phone)
(202) 585-8080 (facsimile)
lmachado@nixonpeabody.com
jbramlette@nixonpeabody.com

*Counsel for Plaintiffs Troy L. Stevenson and Tiara Latisha Stevenson*

---

[9]     If the Court dismisses the intentional infliction of emotional distress claim for failure to state a claim, the plaintiffs request leave to amend.  Absent prejudice to the defendant or a futile amendment, plaintiffs should generally be granted leave to amend where justice requires.  *See Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 877-78 (D.C. Cir. 1993).  Moreover, courts should grant leave to amend with even greater liberality when the complaint was drafted by a *pro se* plaintiff.  *Id.* at 876-77 ("leave to amend a complaint should be freely given when justice requires . . . this principle [is] particularly appropriate when the party seeking to amend . . . does so without the benefit of counsel").

## **REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 78.1, we respectfully request oral argument on this motion.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 27, 2006, I caused a copy of the foregoing document to be filed with the Court, via the Court's ECF system, which will send copies to the following counsel of record:

> George M. Church, Esq.
> Michelle Noorani, Esq.
> MILES & STOCKBRIDGE P.C.
> 10 Light Street
> Baltimore, Maryland 21202

_____/s/_____
Leslie Paul Machado

10027367.2