IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TROY L. STEVENSON, et al. | * | |
| Plaintiffs | * | |
| v. | * | Civil Action No.: 1:06-cv-00632 |
| DINA BLUHM | * | The Honorable Paul L. Friedman |
| and GEICO General Insurance Company (incorrectly named as "G.E.I.CO") | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**REPLY TO PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

Now come GEICO General Insurance Company, incorrectly named as "G.E.I.CO" and Dina Bluhm, Defendants, by George M. Church and Miles & Stockbridge P.C., their attorneys, and file this Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss.

**I.   INTRODUCTION**

Initially, this suit was brought against Dina Bluhm only, in the Superior Court for the District of Columbia. Ms. Bluhm moved to dismiss the Complaint challenging, *inter alia*, whether District of Columbia courts have personal jurisdiction over her and also challenging the sufficiency of the pleadings. Following removal to this Court, an Amended Complaint was filed adding Tiara Latisha Stevenson and Darlene Middleton as Plaintiffs and adding GEICO as a Defendant. Defendants renewed the Motion to

Dismiss, re-asserting the lack of personal jurisdiction over Ms. Bluhm and the insufficiency of the pleadings as bases for the Motion.

In the interests of expediency and judicial economy, **Ms. Bluhm is withdrawing her challenge to the Court's jurisdiction.** As will be discussed more fully below, however, Defendants urge the Court to dismiss the Amended Complaint under Rule 12(b)(6) because Plaintiffs have not, nor can they state a cause of action for intentional infliction of emotional distress based on the alleged facts.

## II.   UNDER THE FACTS ALLEGED, THE PLAINTIFFS HAVE NOT, AND CANNOT STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

### A.   BACKGROUND

The allegations in the Amended Complaint simply fall short of what is required to state a claim for intentional infliction of emotional distress. A <u>single</u> comment allegedly made by Ms. Bluhm is the <u>sole</u> basis for their claim. Indeed, the claim hinges entirely on Ms. Bluhm's alleged use of a <u>single</u> word, "jumped," in describing how Latrice Tia Stevenson came to be in front of the automobile driven by GEICO insured, Leslee McRae. Nothing else allegedly said or done by Ms. Bluhm (or any other GEICO employee), forms a basis for Plaintiffs' claim that Ms. Bluhm and GEICO intentionally inflicted emotional distress upon the Plaintiffs. The courts recognize that it is often a difficult task to draw the line between conduct which is and is not sufficiently outrageous or extreme to support a claim for intentional infliction of emotional distress. As demonstrated through a review of the very cases relied upon by Plaintiffs, the question here is not even close.

The Amended Complaint alleges, in pertinent part, that Troy Stevenson placed a call to Ms. Bluhm on March 16, 2005, to discuss the claim related to his daughter's

2

unfortunate death on March 8, 2005. During the conversation, Stevenson and Bluhm allegedly engaged in "financial settlement discussions" during which Ms. Bluhm allegedly stated that "GEICO was prepared to pay 2,500 dollars on a policy held by Leslee McRea (sic), for burial of . . . Latrice. . . ."[1] When Mr. Stevenson asked whether that was all, Ms. Bluhm allegedly responded "what do you think we should pay when your daughter 'jumped' in front of our insured's vehicle?" That brief exchange, and particularly, Ms. Bluhm's statement and her use of the word "jumped" forms the entire basis for Plaintiffs' claim. During a status conference on May 4, 2006, Mr. Stevenson acknowledged that he secretly recorded the subject conversation. Yet, recently, Plaintiffs' counsel advised that the pertinent portions of the recording are "irretrievably lost."

Based on Ms. Bluhm's use of the word "jumped" (rather than ran, stepped, walked, darted, sprinted, dashed, leapt, loped, bounded, hopped, or any number of other verbs), Plaintiffs argue that "Ms Bluhm expressed her viewpoint to Mr. Stevenson that his daughter committed suicide. . . ." (Plaintiffs' Opp. at 11). Elsewhere in their Opposition, Plaintiffs describe Ms. Bluhm's comment as "the imposition of her unqualified and otherwise baseless opinion that the Plaintiff's daughter committed suicide . . . ." *Id.* There is no allegation that Ms. Bluhm used the term suicide or any other such term and no other allegedly outrageous statement is attributed to Ms. Bluhm. There is no allegation that the possibility that Latrice committed suicide was even discussed. Thus, the entire basis for Plaintiffs' claim of outrageousness is <u>their own conclusion</u> that by using the word "jumped" Ms. Bluhm meant to imply that Latrice

---

[1] If this case progresses beyond the Motion to Dismiss, it will become clear that discussion related to payment under McRae's personal injury protection ("PIP") coverage which had a policy limit of $2,500.

3

Stevenson purposefully and intentionally jumped into the path of Ms. McRae's automobile for the purpose of ending her own life. Plaintiffs argue that Ms. Bluhm's statement could have only the meaning they ascribe to it when, in fact, there was nothing else in the context of the alleged conversation that even remotely suggests that Ms. Bluhm implied suicide by her comment. There is plainly no basis for Plaintiffs' argument.

### B.    EXTREME AND OUTRAGEOUS CONDUCT

To allege a claim for intentional infliction of emotional distress, a defendant's actions must be extreme and outrageous. In discussing this requirement, Plaintiffs cite a handful of cases from this jurisdiction. As a review of Plaintiffs' authority will disclose, that authority provides no support to these Plaintiffs and, in fact, supports Defendants' argument that this case should be dismissed.

Plaintiffs' cite *Drejza v. Vaccaro*, 650 A.2d 1308 (D.C. App. 1994), a case where the plaintiff was raped and sodomized in her apartment by her former boyfriend. The attack was particularly violent; her clothes were ripped off, she was struck about the face and back and was choked by her assailant; she suffered bruises, her face was slammed, and she had choke marks on her neck and various other injuries. Ms. Drejza called 911 and was transported by the uniformed officers to the precinct for further investigation. *Id.* at 1309.

Detective Michael Vaccaro, a detective assigned to the Sex Offense Branch of the Metropolitan Police Department, conducted an intake interview with Ms. Drejza within "an hour or so" of the attack. During the interview, Vaccaro "acted in an obnoxious manner . . ., snickered at her account, and generally treated her with derision and scorn."

4

He "was 'smiling during the whole thing,' acting 'like he enjoyed it.'" Vaccaro gave plaintiff the impression that he thought it was absurd to press charges, potentially subjecting her former boyfriend to life in prison since, prior to the attack, they had previously been involved in a sexual relationship. At one point, Vaccaro allegedly told the plaintiff to "just forget about it and go home to sleep." Moreover, he continually stressed how difficult it is to prosecute a rape case in the District of Columbia under the circumstances. At the time she was transported to the precinct, Ms. Drezja was told by the uniformed officers to take her torn undergarments with her, but Vaccaro refused to accept them. As the plaintiff was leaving following the interview with Vaccaro, he told her to "take your little panties home with you" and just tossed them to her. *Id.* at 1310.

There was a second interview twelve days later when the plaintiff came back to formally press charges against her assailant. During that follow-up interview, Vaccaro again questioned whether the Plaintiff wanted to "send that guy to jail for life." Vaccaro also "joked and snickered at a reference in a medical report to Ms. Drejza's 'marital hymen', remarking that this 'means you're not a virgin.'" *Id.* at 1310-1311.

Despite this accumulation of evidence, the trial judge granted Vaccaro's motion for summary judgment, ruling that "the law does not afford a cause of action for bad taste, boorishness, condescension, obnoxiousness or social ineptitude." *Id.* at 1311.

In a split decision, the majority reversed the trial court, ultimately concluding that the facts, as alleged, presented a jury issue as to whether Vaccaro's actions were sufficiently outrageous and extreme to support the claim. The majority recognized that "[t]he requirement of outrageousness is not an easy one to meet." *Id.* at 1312. The Court also quoted with a approval, comment (d) to Restatement (Second) of Torts, §46 which

5

states that "[t]he conduct must be 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* Yet, because the defendant's conduct occurred shortly after the brutal attack and because Vaccaro undoubtedly appreciated Ms. Drejza's peculiar susceptibility to emotional distress because of what she had been through a short time before, the majority determined that it was for a jury to decide whether "Vaccaro's obnoxiousness crossed the line to outrageousness." *Id.* at 1316.

In a dissenting opinion, Associate Judge Terry "strongly disagree[d] with [his] colleagues' disposition of this case." *Id.* at 1317. Judge Terry opined that Vaccaro's conduct, while less than gracious or considerate, did not rise to the level of extreme or outrageous behavior necessary to satisfy the tort's requirements. He concluded his dissent thusly:

> As a matter of common decency, Detective Vaccaro clearly should have treated Ms. Drejza with more respect and kindness. He should not have said much of what he said to her, should not have been smiling (or smirking) as he said it, should not have thrown her panties at her, should not have been, as Ms. Drejza said, "just a real jerk about it." But common decency is a moral, not a legal duty. <u>Detective Vaccaro may be a lout and a boor, or worse, but in my view he is no tortfeasor</u>.
>
> Respectfully but vehemently, I dissent.

*Id.* at 1318. (emphasis added). It defies logic for these Plaintiffs to argue that *Drejza* supports their claim that Ms. Bluhm's lone statement somehow compares to the defendant's conduct in *Drejza*. That argument simply cannot withstand scrutiny.

A review of other cases relied upon by Plaintiffs is equally unavailing to their claim that Ms. Bluhm's conduct was extreme and outrageous. In *King v. Kidd*, 640 A.2d

6

656 (D.C. 1993), the plaintiff sued her immediate supervisor, Carter, for sexual harassment in the workplace. The allegations against Carter spanned many months and were, without a doubt, extreme and outrageous. She also sued Carter's boss, King, for intentional infliction of emotional distress, alleging that King colluded with Carter by failing to investigate the allegations and by trivializing the extreme harassment which occurred. A more senior level manager, Lambert, was also included in the complaint. A jury found all three defendants jointly and severally liable for the intentional infliction of emotional distress.

The appellate court, in another split decision, upheld the verdict as to all but Lambert. The allegations against King were lengthy and detailed and, for sake of brevity, will not be repeated here. Suffice it to say, however, in a stinging rebuke of the majority's opinion, Senior Judge Gallagher accused the majority of "carefully avoiding a substantive discussion of the law of this serious tort of intentional infliction of emotional distress . . . by not facing up to the realities of [the Court's prior] decision in *District of Columbia v. Thompson I*, 570 A.2d 277, 289-91 (D.C. 1990), vacated in part on other grounds (*Thompson II*), 593 A.2d 621 (D.C.), *cert. den'd*, 112 S.Ct. 380 (1991). In *Thompson*, the Court determined that the allegations were insufficient to sustain an action for intentional infliction of emotional distress. After comparing and contrasting the facts in *Thompson* with those in *Kidd*, Judge Gallagher concluded that the allegations against King were substantially less serious than the claim against the defendant in *Thompson*.

The Plaintiffs also rely heavily on *Garvin v. American Association of Retired Persons*, 1992 U.S. Dist. LEXIS 2013 (D.D.C. 1992), where the plaintiff's boss engaged in a wide range of discriminatory behavior against the plaintiff, took a wide variety of

7

retaliatory action against her after she filed a grievance, and advised plaintiff that she only "wanted to employ older persons who projected a youthful, healthy and energetic image [and] informed plaintiff that the ideal female employee was small breasted, healthy and approximately twenty-five years old; and, publicly criticized [the plaintiff] for the 'hump' on her back and her large breasts." (Slip Op. at 1-2). There was also an allegation that the defendant intentionally destroyed tape recordings of grievance meetings. Because of the emotional distress which plaintiff suffered as a result of the abusive treatment, the plaintiff missed five months from work during which plaintiff's supervisor wrote various memoranda accusing her of unprofessional conduct. After plaintiff's return to work, the supervisor "allegedly joked about AIDS in plaintiff's presence, knowing that plaintiff's brother was suffering from that illness." *Id.*

Despite the factual allegations in *Garvin* summarized above, Plaintiffs' discussion of *Garvin* in their Opposition to this Motion to Dismiss refers only to the AIDS comment, implying that that comment alone would support a claim for intentional infliction of emotional distress. (Plaintiffs' Opp. at 11-12, 13, fn. 8). By ignoring all of the other allegations in *Garvin*, seizing only on the comment about AIDS, the Plaintiffs here simply misstate the holding in *Garvin*, where it was the <u>totality</u> of the allegations which the Court found sufficient to support the claim. Nothing in the *Garvin* opinion supports Plaintiffs' argument that *Garvin* provides "guiding precedent" in support of the Stevensons' claim. Plaintiffs' argument to that effect is misguided at best.

Interestingly, Plaintiffs are critical of the Defendants' reliance upon *Joyner v. Sibley Mem. Hosp.*, 826 A.2d 362 (D.C. 2003) and *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624 (D.C. 1997), both because those cases arose at the summary judgment

stage and also because they arose in the context of employer/employee relationships. Yet, two of the cases upon which Plaintiffs most heavily rely, *Garvin* and *King*, arose in the context of the employer/employee relationship. Moreover, when discussing the elements of the tort of intentional infliction of emotional distress and the necessity for extreme and outrageous conduct, it is of no moment that the cited authority arose out of a summary judgment rather than a motion to dismiss.

When assessing whether a plaintiff can sustain a claim for intentional infliction of emotional distress, whether in a motion to dismiss or a motion for summary judgment, the bottom line is that "it is for the court to determine, in the first instance, 'whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery . . . .'" *Chung v. Lee*, 852 F. Supp. 43, 45 (D.D.C. 1994) quoting Restatement (Second) of Torts, §46, cmt. h. If the allegations, or evidence, when viewed in a light most favorable to the plaintiff, fail to meet the extreme and outrageous requirements for the tort of intentional infliction of emotional distress, the Court should terminate the proceedings regardless of whether in the context of summary judgment or a motion to dismiss.

In their Opposition, Plaintiffs also argue that the determination of whether a defendant's behavior is sufficiently extreme or outrageous must be made by assessing the context of the circumstances in which the conduct occurred. The determination should be viewed "in the specific context in which . . . [it] took place . . ." rather than "in a sterile setting." (Plaintiffs' Opp. at 11, quoting *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 935 (D.C. 1995)). Unfortunately for Plaintiffs, such analysis provides no support for their cause. Just <u>one week</u> after his daughter's tragic death, Mr. Stevenson initiated a

9

telephone call to the insurance company's claims representative for the purpose of "financial settlement discussion[s]" and, indeed, the offending comment was allegedly made in response to Mr. Stevenson's apparent displeasure over the amount of the offer. In the context of settlement discussions one week after Latrice's death, a possibly unfortunate choice of <u>word</u> by Ms. Bluhm is certainly more tolerable and understandable than almost any other scenario imaginable. It should not be left for a jury to determine whether that word selection went "beyond all possible bounds and decency . . . [was] atrocious . . . [or] utterly intolerable . . . ."

Notwithstanding Plaintiffs' assertion to the contrary, there was a legitimate business purpose for the conversation between Plaintiffs and Ms. Bluhm. (Plaintiffs' Opp. at 13). Ms. Bluhm was acting for her employer, GEICO, and on behalf of GEICO's policyholder, Ms. McRae. She was in the process of attempting to settle a claim which, if accomplished, would provide protection to Ms. McRae and would also clearly benefit GEICO as well. For Plaintiffs to argue that there was no legitimate business purpose for the conversation is plainly wrong. *See, Joyner supra* (conduct based on legitimate business reasons did not rise to the extreme or outrageous level required).

Plaintiffs also assert that Ms. Bluhm's alleged statement was rendered more outrageous than it otherwise might have been because her investigation was not completed when the statement was made. Yet, in *Liser v. Smith*, 254 F. Supp.2d 89 (D.D.C. 2003), Judge Huvelle of this Court granted defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment in a claim for intentional infliction of emotional distress against a police detective who signed a detention affidavit based on information obtained from the Bank of America relating to the use of an ATM card. That information

turned out to be inaccurate. Yet, as a result of the detention affidavit, plaintiff was charged with murder and was held without bail for a period of time. In assessing the claim for intentional infliction, Judge Huvelle recognized that:

> [t]he conduct contemplated by the first [element of the tort] must be truly beyond the pale: 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' citing *Drejza, supra* and Restatement (Second) of Torts §46 cmt. d (1965).

254 F. Supp. at 106.

In granting defendant's motion, the Court concluded that while the defendant may have been negligent in not confirming the information before signing the affidavit, "an arrest supported by this sort of this careless error is simply not sufficiently outrageous to support a claim of intentional infliction of emotional distress."[2] *Id.* at 107.

The Stevensons argue that Ms. Bluhm's statement, made while the investigation was still underway, adds to the extreme and outrageous nature of the conduct. However, applying Judge Huvelle's rationale, while the use of the word "jumped" may arguably have been imprudent, it certainly did not "go beyond all possible bounds of decency" nor was it "atrocious", nor was it "intolerable in a civilized community." That is particularly true if Ms. Bluhm's statement was made while her investigation was ongoing.

### C. INTENT

There is no allegation in the Amended Complaint that Ms. Bluhm <u>intended</u> to cause emotional distress by making the comment attributed to her. In their discussion of

---

[2] The Complaint in *Liser* alleged that the defendant and his fellow officers recklessly and intentionally fabricated facts in order to support the arrest and continued detention of the plaintiff. The Court stated that if those allegations were true, they would support the claim. In this case, no such nefarious conduct is alleged against Ms. Bluhm or GEICO.

11

the element of intent, Plaintiffs correctly state that recklessness will suffice to satisfy the necessary intent:

> Liability may attach not only to conduct that is certain to result in several (sic) emotion (sic) distress, but also where there is 'a high degree of probability, that the mental distress will follow [from the Defendant's conduct], and the Defendant goes ahead in conscious disregard of it.'

(Plaintiffs' Opp. at 14). Utilizing this standard, there must be an allegation that severe emotional distress is highly likely to result from a defendant's conduct. There is no such allegation in the Amended Complaint and, at best, there simply is not a high probability that emotional distress would result from Ms. Bluhm's comment.

Likewise, the recklessness standard proposed by Plaintiffs requires a <u>conscious disregard</u> by the Defendant of the probable consequences of her conduct. Again, nowhere in the Amended Complaint is it alleged that Ms. Bluhm understood the high probability that her comment would result in severe emotional distress and there is no allegation that she proceeded nonetheless. In the absence of allegations which satisfy the standard espoused by the Plaintiffs, the Amended Complaint fails to satisfy the intent element.

### D.  SEVERE EMOTIONAL DISTRESS

In order to appropriately allege a cause of action for intentional infliction of emotional distress, not only must the emotional distress be severe, it must also be <u>caused</u> by the defendant's outrageous conduct. In this case, the Plaintiffs had just lost their daughter and sister a week before the conversation with Ms. Bluhm occurred. They certainly and understandably suffered extreme emotional distress from her death. However, they cannot recover for <u>that</u> emotional distress from Ms. Bluhm or GEICO.

Rather, in this case, they could only recover for severe emotional distress arising from Ms. Bluhm's conduct. Their allegations in the Amended Complaint fall short. As pointed out in Defendants' original Motion, the allegations by Mr. Stevenson about sleeplessness, nightmares, loss of appetite and inability to enjoy certain kinds of movies or television shows are, at best, equivocally attributed to his "daughter's death." Similarly, the problems alleged by Tiara Stevenson are alleged to have manifested "since the accident." The attribution of Plaintiffs' complaints to Ms. Bluhm's conduct are lacking and for that reason as well, the Amended Complaint must be dismissed.

### III. LEAVE TO AMEND

At the conclusion of their Opposition, the Plaintiffs request leave to amend if the Court dismisses their claim. (Plaintiffs' Opp. at 18, fn. 9). While Defendants acknowledge that Plaintiffs could likely amend the Complaint to satisfy the pleading requirements regarding intent and severe emotional distress attributable to the Defendant's conduct, the same is not true of the requirement that the Defendant's conduct be extreme or outrageous. It appears that in the Amended Complaint, Plaintiffs have described fully the entirety of Ms. Bluhm's conduct which supports their claim. The substance of the entire conversation between the parties is set forth there and there is no conceivable amendment that could salvage the claim.

### IV. CONCLUSION

In the final analysis, the Court must exercise a gate keeping function when determining the sufficiency of a claim for intentional infliction of emotional distress. When the factual allegations here are compared to the facts in the various cases cited by both sides, the level of outrageousness here falls far short of what the courts have deemed

necessary to support a claim for intentional infliction of emotional distress. Ms. Bluhm may have been guilty of unfortunate word selection but she is not a tortfeasor. For those reasons set forth in their original Motion and in this Reply, Defendants request that their Motion be granted.

/s/ George M. Church
George M. Church
Trial Bar No.: MD00133
MILES & STOCKBRIDGE P.C.
10 Light Street
Baltimore, Maryland 21202
(410) 385-3839 (telephone)
(410) 385-3700 (fax)
gchurch@milesstockbridge.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 15th day of August, 2006, that a copy of the foregoing was served electronically and/or by first class mail, postage prepaid, to:

Leslie Machado, Esquire
Nixon Peabody, LLP
401 9th Street, N.W.
Suite 900
Washington, D.C. 20004

Attorney for Plaintiffs

/s/ George M. Church
George M. Church